**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

OUSMANE DIOUF and BOUYA DIEYE,

Plaintiffs,

v.

LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,

Defendant.

Civil Action No. 26-2572-TDC

# MEMORANDUM OPINION

Self-represented Plaintiffs Ousmane Diouf and Bouya Dieye have filed a Complaint against Defendant Liberty Mutual Personal Insurance Company ("Liberty Mutual") in which they allege a breach of contract and a failure to act in good faith, Md. Code Ann., Cts. & Jud. Proc. § 3–1701 (LexisNexis 2020) ("Section 3–1701"), arising from Liberty Mutual's handling of Plaintiffs' homeowner's insurance claim for losses resulting from a fire that occurred on or about December 12, 2025. On July 21, 2026, the Court denied Plaintiffs' Motion for Preliminary Equitable Relief ("the First Motion"), in which they sought a preliminary injunction requiring Liberty Mutual to complete the adjustment of their insurance claim as to "essential personal property" and provide them with immediate payment for the loss associated with such property, prior to the overall resolution of the claim. First Mot. Prelim. Inj. at 5, ECF No. 12. Plaintiffs have now filed a Motion for Reconsideration of that ruling through a Renewed Emergency Motion for Limited Preliminary Injunction ("the Renewed Motion"). Separately, Liberty Mutual has filed a Partial Motion to Dismiss, in which it seeks dismissal of Plaintiffs' claim for a failure to act in good faith. Upon review of the submitted materials, the Court finds that no hearing is necessary.

*See* D. Md. Local R. 105.6. For the reasons set forth below, Plaintiffs' Renewed Motion for a Preliminary Injunction will be DENIED, and Liberty Mutual's Partial Motion to Dismiss will be DENIED.

## DISCUSSION

### I. Renewed Motion for a Preliminary Injunction

The Renewed Motion for a Preliminary Injunction is most properly construed as a Motion for Reconsideration of the First Motion because Plaintiffs again seek a preliminary injunction based on the same legal argument, and prior to any material change in the procedural posture of the case. In relation to the Renewed Motion, Plaintiffs have filed a 20-page reply brief which violates the limitations on reply briefs set forth in Local Rule 105.3 and § III.B.2 of the Court's Case Management Order, ECF No. 8. Further, after the Renewed Motion, Plaintiffs submitted two supplemental filings, a "Corrected Inventory" and an additional brief entitled "Plaintiff's Supplement" relating to alleged irreparable harm, in disregard of the Local Rules that enumerate the permitted filings in relation to a Motion. ECF Nos. 34, 36; D. Md. Local R. 105.2(a). In the interests of resolving the Renewed Motion, the Court will accept and consider these filings, but Plaintiffs are forewarned that any future briefs that do not conform to the Court's requirements including in relation to page limits will be summarily stricken, and that on any future Motions, the Court will not accept, and will summarily strike, supplementary material beyond the authorized briefs.

In the Renewed Motion, Plaintiffs again seek a preliminary injunction to obtain an advance payment from Liberty Mutual for certain losses, but they have narrowed the relief sought to $15,000 based on the more specific theory that their children immediately require "replacement

computers, scientific calculators, school supplies, essential clothing, footwear, and other basic property necessary for their education." Renewed Mot. at 1, ECF No. 25.

Because the Court's ruling on the First Motion did not resolve the case, the Renewed Motion is a Motion for Reconsideration of an interlocutory order and is thus governed by Federal Rule of Civil Procedure 54(b), under which such a motion may be granted only where there is: (1) "potentially different evidence discovered during litigation," or a subsequent trial producing "substantially different evidence"; (2) "a change in applicable law"; or (3) a clear error causing manifest injustice." *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017). In the Renewed Motion, Plaintiffs identified no "different evidence" that arose during the litigation or after a trial, as the facts asserted in that Motion about their children's school-related needs were available and known to them at the time of the First Motion. *Id.* Plaintiffs do not point to any change in applicable law or persuasively allege a clear error in the Court's previous ruling. Accordingly, the Renewed Motion, properly construed as a Motion for Reconsideration under Rule 54(b), will be denied.

Where Plaintiffs are self-represented and thus entitled to liberal construction of their filings, the Court will also analyze the Renewed Motion as a separate Motion for a Preliminary Injunction. To obtain a preliminary injunction, a moving party must establish that: (1) there is a likelihood of success on the merits; (2) there is a likelihood of irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Each of the four factors must be satisfied for the moving party to obtain a preliminary injunction. *See Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

A party seeking a mandatory preliminary injunction, consisting of one that alters the status quo rather than preserves it, faces a particularly heavy burden. Mandatory preliminary injunctions are "disfavored in any circumstance" and are "warranted only in the most extraordinary circumstances." *Pierce v. N.C. State Bd. of Elections*, 97 F.4th 194, 209 (4th Cir. 2024) (internal citations omitted). Here, Plaintiffs' requested preliminary injunction, an order requiring Liberty Mutual to make an advance payment before the resolution of the case, would alter the status quo and is thus a mandatory injunction.

As to the first *Winter* factor, Plaintiffs have not demonstrated a likelihood of success on the merits of their underlying claims. Plaintiffs allege a breach of contract by Liberty Mutual based on the contention that it has not fulfilled its obligations under their homeowner's insurance policy ("the Policy") by "failing to properly adjust the contents claim; failing to issue payment for covered losses; improperly rejecting Plaintiffs' Proofs of Loss; conditioning payment on unsupported and overbroad financial-document demands; and failing to identify and pay undisputed portions of the claim." Compl. ¶ 26, ECF No. 3. Plaintiffs have provided only limited evidence of these broad allegations. Plaintiffs have demonstrated that they submitted an initial "Proof of Loss Form" on March 5, 2026, which was received by Liberty Mutual on March 8, 2026. Proof of Loss Form at 1, Compl. Ex. 1 at 1–3, ECF No. 3-1; 4/20/26 Letter at 2, Opp'n Renewed Mot. Ex. 2, ECF No. 31-2. A dispute arose because Liberty Mutual requested additional documentation, including receipts, photographs, and proof of ownership of reported damaged jewelry; invoices, bills, and receipts for certain items; a credit report; bank statements; and tax documents. Plaintiffs refused to comply with such requests, which they considered to be "overbroad and invasive documents requests," particularly those relating to credits reports, bank statements, and tax returns. 4/8/26 Email at 2, Compl. Ex. 1 at 10–12, ECF No. 3-1.

In a March 27, 2026 letter, Liberty Mutual informed Plaintiffs that the Proof of Loss was rejected in part because Plaintiffs "did not provide sufficient documentation to support the ownership and values of damaged contents." 4/20/26 Letter at 2. In an April 20, 2026 letter, Liberty Mutual asserted that the requested documents sought were needed to "establish the ownership and value of claimed contents," that such requests are warranted "when there is concern that the policyholder has inflated the value of their claim," and that "[g]iven the high value of claimed items and the insufficient support provided to date to establish the ownership and value of all items, Liberty's requests are relevant to rule out the possibility that the value of the claim has been inflated." *Id.* at 3–4.

The Policy states that a policyholder's duties after a loss include, "[a]s often as [Liberty Mutual] reasonably require[s] . . . provid[ing] [Liberty Mutual] with records and documents we request and permit[ting] us to make copies." Policy at 8, Compl. at 11–54, ECF No. 3. Generally, in relation to an insurance claim, financial documents are relevant and may reasonably be requested when an insurer suspects fraud, even in circumstances where fraud is uncertain. *See Snyder v. Chester Cnty. Mut. Ins. Co.*, 264 F. Supp. 2d 332, 338 (D. Md. 2003). To request financial documents, an insurer need only believe in good faith that there is a possibility of fraud. *Id.*; *see also Wood v. Allstate Ins. Co.*, 21 F.3d 741, 747 (7th Cir. 1994) (noting that a request for tax returns was justifiable when there was a "possibility" that the policyholder had engaged in insurance fraud by committing arson).

Although the question of whether Plaintiffs inflated the value of their claim is a factual dispute that cannot be resolved at this early stage, the record provides support for Liberty Mutual's concern about an inflated claim and its position that requests for additional documentation, as well as financial records, were warranted to address that concern. For example, in the inventory of

Plaintiffs' items prepared by Thomasville Restoration ("the Inventory"), on which Plaintiffs report that the value of their personal property is approximately the same as the $629,550 policy limit, Plaintiffs implausibly reported that almost all of the 1,847 listed items had been owned for two years or less. As reflected in its April 20, 2026 letter, Liberty Mutual also made requests for photographs or other documents "evidencing melted gold jewelry at the time of the loss" and "evidencing [the] location of stored jewelry at the time of the loss," which were reasonable when, as is apparently the case here, Plaintiffs' claim includes the value of jewelry that was allegedly destroyed in the fire. 4/20/26 Letter at 3. In addition, the Inventory lists numerous items with suspiciously high estimated valuations, including a $4,800 sports jacket; a $384.00 pair of jeans, a $384.00 fanny pack; a $256.00 pair of t-shirts; and a $32.00 tube of toothpaste.

Plaintiffs' recent submission, after the briefing on the Renewed Motion was completed, of the Corrected Inventory does not alter the Court's conclusion that the present record supports the argument that there has been a reasonable concern that Plaintiffs' insurance claim was inflated, because at the time it requested the additional documentation, Liberty Mutual had only the original Inventory. In any event, the Corrected Inventory, while removing most of the entries for the approximate number of years that individual items were owned, merely replaced those entries with "Do not recall," did not change the overall estimated value of Plaintiffs' personal property, and did not change any of the estimated values for the items referenced above. *See, e.g.*, Corrected Inventory at 132–33, ECF No. 34-1. The Court therefore finds that Plaintiffs have not demonstrated a likelihood of success on the merits of their breach of contract claim.

The same facts demonstrate that Plaintiffs have not demonstrated a likelihood of success on their claim of a failure to act in good faith under Section 3–1701. In determining whether an insurer acted in bad faith, courts consider the totality of circumstances, including the efforts or

measures taken by the insurer to resolve the coverage dispute and the insurer's diligence and thoroughness in investigating the facts relevant to coverage. *See Barry v. Nationwide Mut. Ins. Co.*, 298 F. Supp. 3d 826, 830 (D. Md. 2018). A breach of contract is a "necessary but not sufficient condition for a lack of good faith claim," and a delay in handling a claim or an insurer's failure to pay policy benefits generally cannot serve as the sole basis for a lack of good faith claim. *Id.* Where the Court has found that the present record does not demonstrate a likelihood of success on the breach of contract claim, and it provides support for Liberty Mutual's position that its requests for documentation and financial records were reasonable, it necessarily concludes that Plaintiffs have not shown a likelihood of success on the merits of the claim of a failure to act in good faith. Thus, they have not established the first factor needed to obtain a preliminary injunction.

Plaintiffs have also failed to demonstrate a likelihood of irreparable harm. To establish irreparable harm, "the movant must make a clear showing that it will suffer harm that is neither remote nor speculative, but actual and imminent," and that the harm is irreparable, "meaning that it cannot be fully rectified by the final judgment after trial." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (citations omitted). Plaintiffs allege that the irreparable harm stems from the adverse educational impact that would result if they do not receive an advance payment of $15,000 to pay for laptop computers and other school-related costs. With the Motion, however, they provided only vague and hypothetical statements about the potential consequences of not receiving such funding. In their unauthorized Plaintiffs' Supplement, although Plaintiffs assert that their children's grades have declined during the present academic semester and subjectively claim that the failure to grant the requested preliminary relief is responsible for this result, they acknowledge that the disruption

caused by the fire and the family's temporary relocation have had a significant impact on the children, so it is far from clear that any adverse impact on academic results has been caused by the failure to compel immediate funding for educational expenses from Liberty Mutual.

Even if the Court were to conclude that laptop computers must be provided to Plaintiffs' children to avoid irreparable educational loss, Plaintiffs have not shown that the requested preliminary relief is the only way to obtain the computers and other supplies. They have asserted that they had the "financial ability to acquire and accumulate the substantial household property" at issue in their insurance claim which, according to the Inventory, includes personal property with a replacement cost of over $670,000, a significant amount of which consists of high-end luxury consumer goods with extremely high prices or stated values. Renewed Mot. at 7; Inventory at 154, Renewed Mot. Ex. 3, ECF No. 25-3. They have also submitted corporate records and proof of income reflecting that Diouf owns a software development company that has paid him approximately $645,814 in compensation from 2020 to 2022. They acknowledge that they have continued to earn income since the fire. Thus, while Plaintiffs also claim that recent financial needs arising from the fire have limited their present ability to pay school-related expenses, the record does not demonstrate that they lack the financial ability to purchase or lease computers, or that they lack the ability to gain access to such devices by other means, such as through their children's schools or through school-related programs. Rather, they note that their request for an advance payment is "fundamentally" rooted in the fact that they pay insurance premiums and that Liberty Mutual has an "obligation to adjust and pay covered personal-property benefits," a rationale which strongly suggests that the Motion is aimed at vindicating their rights under the Policy rather than addressing a truly imminent irreparable harm. Renewed Mot. at 7. For all of these reasons, the Court finds that Plaintiffs have not demonstrated likely irreparable harm.

Where Plaintiffs have not established the first two factors required for a preliminary injunction, the Court need not address the remaining factors. *See Pashby*, 709 F.3d at 320–21. Particularly where they seek the extraordinary remedy of a mandatory injunction, the Renewed Motion, even if construed as a new Motion for a Preliminary Injunction rather than a Motion for Reconsideration, will be denied.

## II. Partial Motion to Dismiss

In its Partial Motion to Dismiss, Liberty Mutual seeks dismissal of Count 2 of the Complaint, the claim of a failure to act in good faith asserted under Section 3–1701, the Maryland statutory provision that authorizes such a claim in relation to an insurance claim. Md. Code Ann., Cts. & Jud. Proc. § 3–1701(d)(2). Liberty Mutual argues that dismissal is required because Plaintiffs failed to satisfy the statutory administrative exhaustion requirement that is a prerequisite for the filing of such a claim in court, specifically that the plaintiff must first file the claim with, and receive a resolution of the claim from, the Maryland Insurance Administration ("MIA"). *See id.* § 3–1701(c)(1).

In relation to this Motion, Plaintiffs have filed a Motion for Leave to File a Surreply. Although surreply briefs are highly disfavored and not ordinarily permitted, D. Md. Local R. 105.2(a), because its filing is unopposed and because it addresses issues first raised in the reply brief, the Court will accept the surreply brief.

### A. Legal Standards

Liberty Mutual argues that this issue is one of subject matter jurisdiction and therefore seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1). Generally, "[a]bsent the legislature 'clearly stating that a threshold limitation on a statute's scope shall count as jurisdictional, courts should treat the restriction as nonjurisdictional in character.'" *Goldfarb v.*

*Mayor & City Council of Balt.*, 791 F.3d 500, 507 (4th Cir. 2015) (quoting *Arbaugh v. Y & H Corporation*, 546 U.S. 500, 515, 516 (2006)). In this instance, Section 3–1701 falls within Title 3 of the Courts and Judicial Proceedings Article of the Maryland Code, which is entitled "Courts of General Jurisdiction—Jurisdiction/Special Causes of Action." The Court therefore agrees that the exhaustion requirement is jurisdictional. *See Class Produce Grp., LLC v. Harleysville Worcester Ins. Co.*, No. ELH-16-3431, 2017 WL 2377105, at *6 (D. Md. May 31, 2017); *Jackson v. Standard Fire Insurance Co.*, No. TDC-17-1612, 2018 WL 348148, at *3 (D. Md. Jan. 9, 2018). On a Rule 12(b)(1) motion, the plaintiff bears the burden of demonstrating that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). Because the Motion presents a factual dispute over whether a jurisdictional requirement has been satisfied, the Court may consider external materials, such as the exhibits submitted by the parties with their briefs on the Motion, in resolving this issue. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

Under Section 3–1701, subject to exceptions inapplicable in this case, "a party may not file an action under [Section 3–1701] before the date of a final decision under § 27–1001 of the Insurance Article" of the Maryland Code. Md. Code Ann., Cts. & Jud. Proc. § 3–1701(c)(1). In turn, Section 27–1001 of the Insurance Article ("Section 27–1001") provides that "a person may not bring or pursue an action under [Section 3–1701] in a court unless the person complies with this section." Md. Code Ann., Ins. § 27–1001(c)(1) (LexisNexis 2017). This provision requires that "[a] complaint stating a cause of action under [Section 3–1701] shall first be filed with the [MIA]." *Id.* § 27–1001(d)(1). In turn, a claim under Section 3–1701 is one that seeks a determination of coverage under an insurance policy or the extent to which the insured party is entitled to receive payment from the insurer for a covered loss, that "alleges that the insurer failed to act in good faith," and that seeks both damages and "expenses and litigation costs." Md. Code

Ann., Cts. & Jud. Proc. § 3–1701(d). "Good faith" is defined as "an informed judgment based on honesty and diligence supported by evidence the insurer knew or should have known at the time the insurer made a decision on a claim." *Id.* § 3–1701(a)(5). Under Section 27–1001, the MIA complaint asserting a Section 3–1701 claim shall (1) "be accompanied by each document that the insured has submitted to the insurer for proof of loss"; (2) "specify the applicable insurance coverage and the amount of the claim under the applicable coverage"; and (3) "state the amount of actual damages, and the claim for expenses and litigation costs described under subsection (e)(2) of this section." Md. Code Ann., Ins. § 27–1001(d)(2).

Section 27–1001 further provides that "[w]ithin 90 days after the date the filing was received by the [MIA], the [MIA] shall issue a decision" on the claim, including whether the insurer "breached its obligation to act in good faith." *Id.* § 27–1001(e)(1)(i). The failure of the MIA to "issue a decision within" the 90-day period "shall be considered a determination that the insurer did not breach any obligation to the insured." *Id.* § 27–1001(e)(1)(ii). After a decision by the MIA, if the insured party does not request a hearing before the Maryland Office of Administrative Hearings within 30 days after service of the decision, the decision becomes final. *Id.* § 27–1001(f)(1)-(3). If such a hearing is requested, the decision at the hearing becomes the final decision. *Id.* § 27–1001(f)(2)(iii).

**B. The MIA Complaint**

Plaintiffs filed a complaint with the MIA on January 22, 2026. Liberty Mutual advances several arguments on why this complaint did not satisfy the exhaustion requirement. First, Liberty Mutual argues that Plaintiffs have failed to comply with the exhaustion requirement because they failed to serve "the present Complaint" on the MIA. Mot. Dismiss at 3, ECF No. 7. To the extent that Liberty Mutual argues that the exact same complaint document must be so filed, the text of

Section 27–1001 does not require a party to file with the MIA the specific document it eventually files in a court, and a filing with the MIA necessarily would differ from a civil complaint filed in federal court. *See Matter of Holder*, 351 A.3d 131, 143 (Md. Ct. Spec. App. 2026) (distinguishing between a petition for judicial review of an MIA decision, which is effectively an appeal of the decision on the specific MIA complaint, and a civil complaint under Section 3–1701 filed in court).

More significantly, Liberty Mutual argues that Plaintiffs' MIA complaint did not constitute a proper complaint that could satisfy the exhaustion requirement. Liberty Mutual points to the Maryland regulations relating to MIA complaints and argues that Plaintiffs' complaint is not "a written document that purports to state a cause of action under" Section 3–1701, Md. Code Regs. 31.15.15.03B(2), but is instead a more general complaint consisting of "any written communication received by the [MIA] that expresses dissatisfaction with a carrier," Md. Code Regs. 31.16.10.02B(5)(a). In support of this distinction, Liberty Mutual asserts that the MIA complaint did not include all of the specific details required by Section 27–1001(d)(2). It further notes that the MIA's letter requesting a response to the complaint from Liberty Mutual did not state that Plaintiffs' complaint was asserted under Section 27–1001 and instead cited Sections 27–303 and 27–304 of the Insurance Article. MIA Letter at 2, Compl. Ex. 1 at 18–19, ECF No. 3-1.

Plaintiffs' MIA complaint, while not referencing Section 3–1701, Section 27–1001, or any other specific statutory provision, focused on alleged bad faith by Liberty Mutual, which is the core of a claim under Section 3–1701, *see* Md. Code Regs. 31.15.15.03B(2), and was not merely a general complaint "that expresse[d] dissatisfaction with a carrier," Md. Code Regs. 31.16.10.02B(5)(a). Specifically, Plaintiffs alleged "a pattern of extreme bad-faith claims handling, including improper depreciation practices, refusal to remove a biased adjuster after formal objection, mischaracterization of cooperation, misuse of subrogation to delay adjustment

and payment, and prolonged delay causing severe hardship to a medically vulnerable household." MIA Compl. at 2, Compl. Ex. 1 at 13–17, ECF No. 3-1. The MIA complaint specifically alleged such bad faith in relation to a specific claim, "No. 060597304," described the circumstances of that claim, and alleged that Liberty Mutual "has failed to adjust and pay the claim promptly, fairly, and in accordance with the policy and Maryland insurance law." *Id.* It further provides specific examples of conduct in relation to this claim that allegedly demonstrate bad faith, such as "bias and improper valuation conduct," "false and misleading" statements, and "[m]isrepresentation of policy provisions and insured obligations," and it concludes by asserting that such conduct "reflects a pattern of systemic bad faith, not a mere valuation dispute." *Id.* at 3–5. Construed liberally, as self-represented filings should be, Plaintiffs' MIA complaint could fairly be deemed to be asserting a Section 3–1701 claim as required by Section 27–1001.

The MIA's references to Section 27–303 and 27–304 of the Insurance Article in its letter requesting a response from Liberty Mutual do not alter this conclusion. Section 27–303 states that it is a violation for an insurer to engage in an "unfair claim settlement practice," which it defines as a list of actions, including "fail[ing] to act in good faith, as defined under § 27–1001 of this title, in settling a first-party claim under a policy of property or casualty insurance." Md. Code Ann., Ins. § 27–303(9). Section 27–304 states that it is a violation for an insurer to engage in an "unfair claim settlement practice . . . when committed with the frequency to indicate a general business practice," defined as a longer list of actions that also includes "fail[ing] to act in good faith, as defined under § 27–1001 of this title, in settling a first-party claim under a policy of property or casualty insurance." *Id.* § 27–304(18). As to Section 3–304, although Plaintiffs used the term "pattern" in their MIA complaint, when viewed in context Plaintiffs' claim was focused only on

their own insurance claim and neither alleged nor provided a basis for a claim about general business practices. MIA Compl. at 2.

As for both Sections 27–303 and 27–304, although these provisions have potential applicability to Plaintiffs' MIA complaint in that they identify as an "unfair claim settlement practice" conduct that includes "a failure to act in good faith, as defined under § 27–1001 of this title," *id.* §§ 27–303(9), 27–304(18), the overlapping nature of such a claim does not preclude a determination that Plaintiffs' MIA complaint satisfied the exhaustion requirement. In *Carlyle v. Travelers Home & Marine Ins. Co.*, No. WDQ-13-2964, 2014 WL 2573381 (D. Md. June 5, 2014), the court held that a plaintiff had satisfied the exhaustion requirement through an MIA complaint that alleged a lack of good faith by the insurer, despite the fact that the MIA analyzed the claim under Section 27–303 and another statutory provision other than Section 27–1001, and that the MIA cited only subsections of Section 27–303 that did not discuss the good faith requirement. *Id.* at *4. The court found that the complaint could be construed as a Section 27–1001 claim for purposes of the exhaustion requirement because Section 27–303 includes a subsection defining an "unfair claim settlement practice" as a "failure to act in good faith, as defined under § 27–1001 of this title," and the MIA actually considered the issue of lack of good faith in its decision. *Id.* (quoting Md. Code Ann., Ins. § 27–303(9)).

Here, where Plaintiffs' MIA complaint has unmistakably alleged that Liberty Mutual acted in bad faith in handling Plaintiffs' claim, the Court similarly finds that the MIA's reference to Section 27–303 and 27–304 does not preclude treatment of the claim as satisfying the exhaustion requirement. *See id.*; *Jerry v. Allstate Ins. Co.*, 553 F. Supp. 3d 287, 291, 294 (D. Md. 2021) (finding that the exhaustion requirement was satisfied where the plaintiff filed a "general consumer complaint" with the MIA that was analyzed under Section 27–303 (citing the MIA decision, ECF

No. 19-3, which decided the claim based on alleged unfair settlement practices in Section 27–303 other than one relating to a failure to act in good faith)); *see also Jackson*, 2018 WL 348148, at *2, *6 (finding that the exhaustion requirement was satisfied where the MIA complaint, which did not use an official Section 27–1001 cover sheet, "explicitly alleged a lack of good faith," even though the MIA analyzed the factors under Section 27–303).

As for Liberty Mutual's argument that Plaintiffs' MIA complaint cannot satisfy the exhaustion requirement because it failed to provide specific facts or information referenced in Section 27–1001, including "all documents submitted to Liberty Mutual for proof of loss," "the amount of the subject insurance claim," "the amount of actual damages," and "expenses and litigation costs," Mot. Dismiss at 3, the Court does not conclude that such an omission disqualifies the complaint. The Court has previously addressed this "hypertechnical argument" in a similar case and concluded that it fails because the statutory language does not clearly demonstrate that the failure to meet these technical requirements would thwart exhaustion, and because such a requirement is inappropriate where, as here, there was no objection before the MIA to the lack of compliance with such requirements, and it was abundantly clear that Plaintiffs were asserting a claim of a lack of good faith to the MIA. *See Jackson*, 2018 WL 348148, at *6. The same reasoning, which the Court incorporates by reference, applies here. *See id.* Other judges in this District have found that the exhaustion requirement was satisfied under circumstances in which the MIA complaint did not appear to meet all identified requirements. *See Jerry*, 553 F. Supp. 3d at 291, 294 (finding that the exhaustion requirement was satisfied by a "general consumer complaint" filed with the MIA); *Fleming v. Corporation Service Company*, No. 24-cv-3335-LKG, 2025 WL 1809711 at *2, *4, *5 (D. Md. July 1, 2025) (declining to dismiss the plaintiff's lack of

good faith claim for a failure to exhaust administrative remedies where the plaintiff had filed an MIA complaint disputing the insurer's conclusion that a fire at his home was intentionally set).

Finally, Liberty Mutual argues that Plaintiffs have failed to comply with the exhaustion requirement because they have not received a final decision on their MIA complaint. Section 27–1001, however, provides that the MIA's failure to issue a decision within 90 days constitutes a determination that the insurer did not breach any obligation to the insured. Md. Code. Ann., Ins. § 27–1001(e)(1)(ii); *Matter of Holder*, 351 A.3d at 136 (stating that the MIA's failure to issue a decision within 90 days "denied the complaint by operation of law"). After such a determination, if a party does not request an administrative hearing, the decision becomes final. Md. Code Ann., Ins. § 27–1001(f)(3); *Barringer v. Progressive Select Ins. Co.*, No. DKC-25-1414, 2026 WL 41092, at *7 n.9 (D. Md. Jan. 7, 2026) (stating that "if Plaintiff filed a complaint and the MIA did not act on it within ninety days, the MIA's failure to act constitutes a decision that may become final and exhaust Plaintiff's administrative remedies").

Here, Plaintiffs have submitted a copy of their MIA complaint, which states that it was filed on January 22, 2026. Although the MIA issued a letter on February 4, 2026 that directed Liberty Mutual to respond to the complaint, it is undisputed that no decision was issued by the MIA. Thus, the MIA complaint is properly deemed to have been denied as of April 22, 2026, 90 days after its filing, and neither Plaintiffs nor Liberty Mutual allege that Plaintiffs requested an administrative hearing pursuant to Section 27–1001(f)(1). Thus, when Plaintiffs filed the Complaint in the present action in state court on May 19, 2026, they did so after there had been a final decision on the MIA complaint, in compliance with the statutory exhaustion requirement.

Where the Court finds that the exhaustion requirement was satisfied, Liberty Mutual's Partial Motion to Dismiss will be denied.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Renewed Motion for a Preliminary Injunction, ECF No. 25, will be DENIED, and Liberty Mutual's Partial Motion to Dismiss, ECF No. 7, will be DENIED. A separate Order shall be issued.

Date: October 28, 2026

THEODORE D. CHUANG
United States District Judge